STATE OF WEST VIRGINIA

*In re* **D.W. Jr. and Z.W.**

**No. 19-0268** (Ohio County 18-CJA-111 and 18-CJA-117)

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.W. Sr., by counsel Ann Marie Morelli, appeals the Circuit Court of Ohio County's February 19, 2019, order terminating his parental rights to D.W. Jr. and Z.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Richard W. Hollandsworth, filed a response on behalf of the children in support of the circuit court's order. The maternal grandmother, K.H., by counsel John M. Jurco, and maternal grandfather, R.H., by counsel Joseph J. Moses, also filed responses in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 27, 2018, the DHHR filed an abuse and neglect petition alleging that petitioner sexually abused D.W. Jr.'s half-sibling, T.B.,[2] and had a history of substance abuse and domestic violence. Specifically, the DHHR alleged that petitioner repeatedly attempted to have sexual intercourse with T.B. from the time she was seven or eight years old and that he sexually abused her when she was fourteen years old. The DHHR also alleged that petitioner was charged with malicious assault against N.H (his then-teenaged girlfriend and mother of Z.W.) in August of 2017 for "kicking her in the head causing bruises on her neck and body." Petitioner also had arrests

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] This child is not at issue in this appeal.

and/or convictions for two domestic batteries, delivery of cocaine within 1,000 feet of a school, forgery, and uttering. Finally, the DHHR alleged that petitioner was "homeless and living from house to house," and never provided for the children emotionally, physically, or financially.

On December 19, 2018, the circuit court held an adjudicatory hearing during which the DHHR presented multiple witnesses to testify regarding the allegations in the petition. Additionally, photographs of N.H. following a domestic violence incident with petitioner were admitted into evidence. Petitioner did not testify or offer any evidence on his own behalf. The circuit court adjudicated petitioner as an abusing parent.

On February 4, 2019, the circuit court held a dispositional hearing. The circuit court took judicial notice of the evidence presented during the adjudicatory hearing. The DHHR presented testimony that petitioner was incarcerated and that even prior to his incarceration, he never provided financial, emotional, or other support to the children. Next, petitioner testified on his own behalf. When asked whether he was previously found to be an abusing and/or neglecting parent, petitioner replied, "Yes. So they say." He subsequently denied "beating up" N.H., but stated that they had "some altercations." Petitioner stated that he "made some mistakes." However, he denied domestic violence with N.H. despite evidence that he was arrested for malicious assault following an altercation with her. When asked about the sexual abuse allegations regarding T.B., petitioner replied, "I can't speak on that." Petitioner further testified that he was sentenced to one to fifteen years of incarceration for an unrelated criminal conviction and had served six months. He also admitted that he had previously been incarcerated multiple times for drug-related convictions. However, he testified that, during one of the drug-related arrests, he did not have any substances in his possession and was "just driving with someone who had" illegal substances in their possession. After petitioner testified, the circuit court took the matter under advisement.

On February 19, 2019, the circuit court entered a final dispositional order in the matter. The court made findings regarding petitioner's history of domestic violence with his children's mothers, his criminal history, his substance abuse issues, and his sexual abuse of T.B. Additionally, the court noted that petitioner had "minimal involvement" with D.W. Jr. and failed to provide financial or other support to him. In regard to Z.W., the circuit court noted that petitioner never met the child due to his incarceration. Further, the court found that petitioner "failed to fully acknowledge his abuse and neglect in the case. He denied domestic violence against [N.H.] and exercised his 5th Amendment right not to testify regarding the allegations of sexual abuse of T.B." Ultimately, the circuit court found "[t]here is clear and convincing evidence that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected by [petitioner] in the near future. Said conditions have existed for years, and [petitioner] has failed to take any active steps to remedy the said conditions." The circuit court found that the children's best interests necessitated that petitioner's parental rights be terminated. The court terminated petitioner's parental rights in its February 19, 2019, order.[3] It is from this order that petitioner appeals.

---

[3]D.W. Jr.'s mother's parental rights were terminated. According to respondents, the permanency plan for D.W. Jr. is adoption by his maternal grandparents. Z.W.'s mother was granted disposition pursuant to West Virginia Code § 49-4-604(b)(5). According to respondents, the permanency plan for Z.W. is legal guardianship with D.W. Jr.'s maternal grandparents.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in not affording him a post-adjudicatory improvement period. In support, petitioner contends that "[n]o evidence by the State showed he was incapable of correcting the problem. Sufficient evidence was shown that he had a problem with his temper and needed to correct the problem." Petitioner further asserts that he "testified that he was ready to address the issues and would work with the [DHHR] to correct them." We do not find petitioner's argument persuasive. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent moves, in writing, for the improvement period and "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Further, we have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

Petitioner failed to testify or present any evidence to demonstrate that he would be likely to participate in a post-adjudicatory improvement period and nothing in the record indicates that

petitioner ever moved for a post-adjudicatory improvement period.[4] Later, during the dispositional hearing, he repeatedly denied domestic violence issues despite evidence of the same and refused to take responsibility for drug-related criminal offenses. Because petitioner failed to acknowledge the issues of abuse and neglect and failed to take responsibility for his actions, an improvement period would have been futile at the children's expense. Therefore, petitioner was not entitled to a post-adjudicatory improvement period and the circuit court did not abuse its discretion in refusing to grant him the same.

Next, petitioner argues that the circuit court erred in terminating his parental rights. Petitioner alleges that the circuit court erroneously terminated his parental rights "due to his silence during the [a]djudicatory [p]roceedings and refusal to answer questions related to the sexual allegations of the [p]etition." We disagree.

First, it is important to note that petitioner's silence at the adjudicatory hearing was properly considered by the circuit court. This Court has held as follows:

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Therefore, because petitioner failed to offer any evidence or testimony to refute the DHHR's evidence against him, the circuit court was within its discretion to consider petitioner's silence as affirmative evidence of his culpability.

Moreover, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental and custodial rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Here, petitioner's silence during the adjudicatory hearing and his refusal to answer questions regarding the allegations of sexual abuse were not dispositive of the termination of his parental rights. The record shows that petitioner was homeless when the petition was filed and failed to provide the children with financial or other support, even before he was incarcerated. Further, the DHHR presented evidence of petitioner's history of domestic violence with the children's mothers as well as his criminal history and substance abuse issues. While petitioner

---

[4]During the dispositional hearing, petitioner asked that the circuit court "give [him] a chance to prove [himself] further down in the future." However, petitioner fails to cite to any part of the record to indicate that he specifically requested a post-adjudicatory improvement period.

4

argues on appeal that he acknowledges the issues of abuse and neglect, the record does not support his assertion. During the dispositional hearing when asked if he understood that he was adjudicated as an abusing parent, petitioner replied, "Yes. So they say." Also during the dispositional hearing, petitioner denied physically assaulting N.H. despite the fact that photographs of her injuries and records of petitioner's arrest following the assault were admitted into evidence. Petitioner also denied substance abuse issues and refused to accept responsibility for his criminal offenses. Because petitioner failed to acknowledge the issues of abuse and neglect or take responsibility for his actions, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of his parental rights was in the children's best interests.

Petitioner also argues that the circuit court should have "decided on a Disposition 5"[5] so that petitioner "would be afforded a chance to come back and show the [circuit c]ourt he had in fact changed and addressed the issues" alleged in the petition. However, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 19, 2019, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: September 13, 2019

---

[5]"Disposition 5" presumably is in reference to West Virginia Code § 49-4-604(b)(5), which provides that upon a finding that an abusing parent is "presently unwilling or unable to provide adequately for the child's needs, [a circuit court may] commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court."

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison